UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, -against- CILIA ADELA FLORES DE MADURO, Defendant. | **OPINION AND ORDER DENYING MOTION FOR PRETRIAL RELEASE** 11 Cr. 205 (AKH) |

ALVIN K. HELLERSTEIN, U.S.D.J.:

On September 9, 2026, Defendant Cilia Adela Flores de Maduro ("Ms. Flores") filed an application for pretrial release subject to home confinement and other proposed conditions. Briefing on the matter was completed on September 30, 2026, and I held a hearing on October 8, 2026. For the reasons discussed below, Ms. Flores' motion is denied with the ability to renew the motion should further medical need arise.

## BACKGROUND

On December 23, 2025, a grand jury returned the Fourth Superseding Indictment, charging Ms. Flores and several co-defendants with cocaine importation conspiracy, in violation of 21 U.S.C. § 963, possession of machineguns and destructive devices, in violation of 18 U.S.C. § 924(c)(1)(A), 924(c)(1)(B)(ii), and 2, and conspiracy to possess machineguns and destructive devices, in violation of 18 U.S.C. § 924(o). On October 6, 2026, a grand jury returned the Fifth Superseding Indictment (the "Indictment"), which additionally charges Ms. Flores with conspiracy to commit torture, in violation of 18 U.S.C. § 2340A(a) and narcoterrorism conspiracy, in violation of 21 U.S.C. § 960a. The Indictment alleges that Ms. Flores, with co-conspirators, engaged in a decades-long conspiracy to traffic and import cocaine into the United States and abused positions

of trust to do so. The Indictment alleges that these actions included taking bribes from drug traffickers, using Venezuelan military and law enforcement resources to aid in the trafficking, and use of violence in furtherance of the conspiracy. Indictment ¶¶ 1, 3. The Indictment additionally alleges that Flores ordered individuals to be tortured as part of the system of repression she helped oversee. Indictment ¶¶ 6, 18–19.

On January 3, 2026, Ms. Flores was apprehended and brought to the Southern District of New York on the charges contained in the Fourth Superseding Indictment. Ms. Flores has been in custody at the Metropolitan Detention Center Brooklyn ("MDC") since. She appeared before me on January 5, 2026, for her initial appearance and arraignment. At her initial appearance, Ms. Flores did not make an application for bail but asked to reserve the right to make such an application in the future without prejudice, which I granted. Jan. 5, 2026 Tr. at 15:1–14. Ms. Flores makes such an application now, seeking pretrial release subject to certain conditions citing medical need for release. The Government opposes the application, arguing that Ms. Flores presents a flight risk that is not mitigated by the conditions proposed by Ms. Flores, that her medical needs do not require release, and that she poses a danger to the community if released.

Ms. Flores notes numerous health concerns that she contends support her application for pretrial release. Ms. Flores does not contend that the care she has received at MDC has been inadequate but rather argues that the conditions of MDC are inadequate to support her need for recuperation for her anticipated heart procedure. Flores Br. at 7 n.2. Ms. Flores is a 69-year-old woman who was in relatively stable health prior to her arrival at MDC. *Id.* at 7. However, since her detention Ms. Flores' health has deteriorated. She has been prescribed baby aspirin, a statin (atorvastatin), diltiazem, as well as nitroglycerin as needed for chest pains. She has continually suffered from reflux and gastritis, has lost two molars and more than 25 pounds. *Id.* at 7. Ms. Flores has a mitral valve prolapse, which she had managed for years by taking a monthly injection. *Id.* at 6.

Ms. Flores' medical needs are primarily cardiac in nature. Ms. Flores also has "a history of rheumatic valve disease with mild stenosis and moderate regurgitation with good heart function" and has asthma. *Id.* at 9. In her time at MDC, Ms. Flores has experienced additional cardiac symptoms including "intense pressure in her chest along with feeling a lack of oxygen," "heart palpitations and has occasional epigastric pain," and "light-headedness, dizziness, and shortness of breath." *Id.* at 10. On April 23, 2026, Ms. Flores underwent a stress test that showed "significant induced arrhythmia consisting of frequent premature ventricular contractions as well as significant 1-2 millimeter ST depression readings in the lateral and inferior leads of the electrocardiogram." *Id.* at 9. Because of these results, Ms. Flores was medically advised to undergo cardiac catheterization, a diagnostic procedure assessing the heart. *Id.* at 7. The results of this test may lead to Ms. Flores needing to undergo more invasive procedures related to her heart. *Id.* Ms. Flores contends that MDC is unable to provide adequate conditions for a proper recovery from such procedures. She alleges that the noise and disruption will prevent her from sleeping more than three to four hours per day, with risks of inmate violence, resulting lockdowns, and her potential future solitary confinement to keep her safe. *Id.* at 7, 10. Ms. Flores contends that she has been unwilling to undergo cardiac catheterization because of these poor recovery conditions. *Id.* at 8.

Ms. Flores proposes the following conditions of release, to ensure her appearance in court and the safety of the community: (1) home detention subject to approved exceptions and with approved visitors; (2) 24-hour armed surveillance approved by the Court without input by Ms. Flores and paid for by Ms. Flores' defense; (3) video-surveillance of the residence; (4) consensual wiretap for a single landline in the residence with no other communication devices; (5) random search; (6) location monitoring via GPS device; (7) surrender of Ms. Flores' passport and travel and identification documents; (8) appointment of a third-party custodian to monitor potential violations of conditions; (9) regular reporting to Pretrial Services; and (10) completion of the

recommended cardiac catheterization and other treatment as deemed appropriate with records of the procedures to be submitted to Pretrial Services.

## LEGAL STANDARD

Under the Bail Reform Act, a court must order pretrial release of a defendant on a personal recognizance bond if such release will "reasonably assure the appearance of the person as required [and will not] endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). A defendant may be detained pending trial if no condition or combination of conditions will reasonably assure the defendant will not flee and will not endanger others. The Government bears the burden of establishing the defendant is a flight risk by a preponderance of the evidence, and a finding of dangerousness must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f); *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). The Bail Reform Act directs courts to consider four factors when assessing pretrial detention: (1) the nature and circumstances of the crimes charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, [and] past conduct," among other factors; and (4) the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

"Subsection (e) of § 3142 provides that there is a rebuttable presumption that 'no condition or combination of conditions will reasonably assure' against flight or danger where probable cause supports a finding that the person seeking bail committed certain types of offenses" including certain violations of the Controlled Substances Act. *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011) (quoting 18 U.S.C. § 3142(e)(3)). Under this framework, the defendant "bears a limited burden of production" to "rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). "Once a defendant introduces rebuttal evidence, the

presumption, rather than disappearing altogether, continues to be weighed along with other factors to be considered when deciding whether to release a defendant." *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991).

## DISCUSSION

As a threshold matter, I hold, and Ms. Flores does not dispute, that a presumption of pretrial detention applies under Section 3142(e)(3) because of the types of offenses charged in Counts Three and Four of the Indictment. Section 3142(e) provides that the rebuttable presumption of detention applies when there is probable cause that the defendant committed "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)" or for "an offense under section 924(c), 956(a), or 2332b of this title." 18 U.S.C. § 3142(e)(3)(A)–(B). Count Three of the Indictment alleges a violation of the Controlled Substances Act that carries a maximum penalty of life imprisonment and Count Four alleges a violation of Section 924(c). These charges each trigger the presumption in favor of continuing pretrial detention in 18 U.S.C. § 3142(e)(3).

### I. The application of the Section 3142(g) factors shows that Ms. Flores presents a flight risk and danger to the community.

Under this framework, I consider each of the factors in Section 3142(g) and find that Ms. Flores presents both a serious flight risk and a danger to the community.

#### A. The nature and circumstances of the offense favor pretrial detention.

First, the nature and circumstances of the offense favor pretrial detention. Ms. Flores does not dispute the seriousness of the offenses but contends that they should be considered in light of the arguments she makes on sovereign immunity in her pending motion to dismiss. Briefing has not been finished on the motion, and I am unable to consider the merits. More importantly, the seriousness of the offenses alleged favors pretrial detention. The crimes for which Ms. Flores is charged carry lengthy terms of imprisonment, such that if Ms. Flores is found guilty

on all counts she faces a potential mandatory minimum term of 50 years' imprisonment and a maximum term of life. These lengthy potential sentences provide a high incentive to flee. *See United States v. Liebowitz*, 669 F. App'x 603, 605 (2d Cir. 2016) (summary order) ("[t]he lengthy jail sentence that could be imposed for the charged crimes provides an incentive to flee."). Therefore, the seriousness of the offenses charged and the motivation to flee from the lengthy potential sentence cause this factor to support pretrial detention.

**B. The strength of the evidence favors pretrial detention.**

Second, the strength of the evidence favors pretrial detention. Ms. Flores denies the allegations against her in the Indictment and contends that the strength of the evidence is less than the Government argues and that the merits her pending motion to dismiss favor her. The Government contends that it has strong evidence against Ms. Flores and intends to call multiple cooperating witnesses who will testify directly against Ms. Flores in relation to the charged conduct. Gov. Br. at 8–9. At this stage, I hold that the merits weigh in favor of pretrial detention, and I am not in a position to evaluate Defendants' motions to dismiss. The Government's cooperating witnesses, and my involvement in previous versions of the evidence persuades me that the merits favor continued detention.

**C. Ms. Flores' history and characteristics favor pretrial detention.**

Third, I find that the history and characteristics of Ms. Flores support pretrial detention. Ms. Flores contends that she has lived her life as a public servant and that she has respect for the law and would not flee. Ms. Flores also argues that she has a significant tie to the United States, her husband, Mr. Maduro, and proposes extensive surveillance and other conditions of release that she contends can adequately assure that she will not flee. Ms. Flores asks that I consider her health, her need for medical care, and the poor conditions of recovery at MDC in assessing her history and characteristics.

Ms. Flores asks, in essence, that I take her at her word that she will respect the law and not flee, or be unable to flee, if released under the conditions proposed, and contends that the conditions of release will be adequate to assure that she will remain in this district and appear in court. However, her assurances are not sufficient in light of the other factors regarding Ms. Flores' history. Ms. Flores is not a United States citizen and has no ties to this district, with the exception of Mr. Maduro, who also is in custody. She faces the prospect of spending the remainder of her life in prison, in a foreign country, lonely, without supporting family and friends in an unfamiliar environment. Further, while Ms. Flores contends that she has no financial or other resources to flee, her former positions of power in the Venezuelan government suggest that she can acquire necessary funds tempting to a guard. Furthermore, the national security interests of the United States are involved. If she were to flee, I doubt that Venezuela would extradite Ms. Flores to the United States in due time.

These risks of flight have to be balanced against Ms. Flores' medical needs. I do not doubt the seriousness of Ms. Flores' concerns about her health and understand that MDC imposes difficult conditions for the maintenance of one's serious health issues. However, Ms. Flores has not yet undergone the recommended diagnostic procedure, cardiac catheterization, that would provide a clearer picture of the extent of her medical needs and whether she actually needs more invasive procedures that would require a more difficult recovery. The prospect of this intensive recovery is the basis underlying Ms. Flores' request for pretrial release; yet she cannot say persuasively that she will need to undergo a serious medical intervention. Thus, I cannot find, on this record, that Ms. Flores currently has a medical need that would warrant pretrial release. And, if there is a risk of flight, her alleged relationships with "drug lords" and the new allegations relating to torture show a danger to the community. My finding of dangerousness is supported by clear and convincing evidence. *See United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995).

Therefore, I find that the history and characteristics, including Ms. Flores' medical conditions, weigh in favor of detention. However, Ms. Flores may renew her motion should her medical conditions worsen, should she discover that she must actually undergo a serious medical procedure after completion of the cardiac catheterization, or should conditions change.

**II. No condition or combination of conditions can reasonably assure Ms. Flores' appearance.**

In support of her application for pretrial release, Ms. Flores proposes a list of conditions of release. However, as balanced against the factors finding her to be a flight risk, danger to the community, and questions about the seriousness of her recuperative needs, Ms. Flores' proposed conditions cannot be sufficient.

The Government contends that releasing Ms. Flores under the conditions proposed, which include privately hired security guards and other monitoring, would violate this principle and run afoul of the Bail Reform Act and the Second Circuit's holding in *Boustani*. 932 F.3d 79, 82 (2d Cir. 2019). The Second Circuit held that "the Bail Reform Act does not permit a two-tiered bail system in which defendants of lesser means are detained pending trial while wealthy defendants are released to self-funded private jails." *United States v. Boustani*, 932 F.3d 79, 82 (2d Cir. 2019); *see* 18 U.S.C. §§ 3141 et seq. Under this precedent, a court cannot "permit wealthy defendants to employ privately funded armed guards where an otherwise similarly situated defendant without means would be detained." *Id.*

Ms. Flores argues, however, that she is entitled to be released under her proposed conditions, not because of her access to the wealth of Venezuela's funding of her defense, but because of her recuperating needs. As I have discussed, it is premature to consider these needs, and it is premature to consider *Boustani*.

**CONCLUSION**

Ms. Flores' motion for pretrial release is denied. However, Ms. Flores may renew her motion if her medical conditions worsen, or other reasons so suggest. The Clerk of Court shall terminate ECF No. 326.

SO ORDERED.

Dated: October 8, 2026
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge